# United States Court of Appeals for the Federal Circuit

04-1553

FIELDTURF INTERNATIONAL, INC. and FIELDTURF INC.,

Plaintiffs-Appellants,

v.

SPRINTURF, INC. and EMPIRE AND ASSOCIATES, INC.,

Defendants,

and

SPORTFIELDS LLC and ORION,

Defendants-Appellees.

Micheal D. Lake, Factor & Lake, Ltd., of Chicago, Illinois, argued for plaintiffs-appellants. With him on the brief were Jody L. Factor and William J. Lenz. Of counsel was Jacob D. Koering.

Roger M. Mason, Sweeney, Mason, Wilson and Bosomworth, of Los Gatos, California, argued for defendants-appellees. With him on the brief was Bradley D. Bosomworth.

Appealed from: United States District Court for the Eastern District of California

Judge Frank C. Damrell, Jr.

# United States Court of Appeals for the Federal Circuit

04-1553

FIELDTURF INTERNATIONAL, INC. and FIELDTURF INC.,

Plaintiffs-Appellants,

v.

SPRINTURF, INC. and EMPIRE AND ASSOCIATES, INC.,

Defendants,

and

SPORTFIELDS LLC and ORION,

Defendants-Appellees.

_____

DECIDED:    January 5, 2006

_____

Before NEWMAN, SCHALL, and DYK, <u>Circuit Judges</u>.

NEWMAN, <u>Circuit Judge</u>.

FieldTurf International, Inc. and FieldTurf, Inc. (collectively "FieldTurf") appeal the decision of the United States District Court for the Eastern District of California, granting summary judgment of noninfringement in favor of Sprinturf, Inc., Empire and Associates, Inc., SportFields LLC, and Orion (collectively "SportFields"); granting summary judgment in

favor of SportFields on its counterclaims of intentional interference with prospective economic advantage and unfair competition; and awarding attorney fees to SportFields.[1]

We affirm the holding of noninfringement, reverse the holdings of intentional interference with economic advantage and unfair competition, and vacate the award of attorney fees.

## BACKGROUND

For construction of a sports playing field for the Folsom-Cordova Unified School District in California, the School District wanted to use a synthetic turf similar to a FieldTurf installation in a local park. The Request for Proposal ("RFP"), prepared by the Architect for the School District, specified: "Pro series soccer synthetic grass system manufactured by FieldTurf . . . or approved equal." The RFP specifications included features that characterized the FieldTurf product, including the fiber denier, fiber height, fiber tufting, porous secondary backing, and infill layering system of sand and rubber. The documents describing the procurement obligations for California public projects state that when a product is referenced in a RFP by the manufacturer's name, all standard materials and features of that product are deemed to be inherently specified. Section 2.05 of the document that set forth the obligations of the bidding parties provided, in pertinent part:

> Whenever, in Contract Documents, any material, process or specified patent
> or proprietary name and/or by name of manufacturer is indicated, such name
> shall be deemed to be used for purpose of facilitating description of material

---

[1]  FieldTurf Int'l, Inc. v. Sprinturf, Inc., No. Civ. S-2-1409, 2004 U.S. Dist. LEXIS 19517 (E.D. Cal. Mar. 24, 2004); June 1, 2004 (Memorandum & Order); July 12, 2004 (Final Judgment).  Sprinturf, Inc. is not a party to this appeal.

and/or process desired, and shall be deemed to be followed by words "or equal."

SportFields, a competing producer of synthetic turf, complained to the School District that the specifications sole sourced FieldTurf's product, pointing out that California law does not favor sole source procurement. The School District responded that the specifications would be revised to ensure competitive bidding. A SportFields sales representative met with the School District to discuss SportFields' product "PerfecTurf," which does not use a sand and rubber layered infill or have a porous secondary backing, as required by the specifications as then written. SportFields also demonstrated an installation of PerfecTurf to School District representatives. FieldTurf in turn suggested tests the School District should perform to compare the qualities of the various products, and stressed the superiority of the FieldTurf product. The FieldTurf product is covered by FieldTurf's United States Patents No. 5,958,527 entitled "Process of Laying Synthetic Grass," and No. 6,338,885 entitled "Synthetic Turf."

The bid specifications were amended. Addendum 1 added the requirement of an infill that included cryogenic rubber, which is an element of the FieldTurf product and the FieldTurf patent claims. Addendum 3 removed the language "FieldTurf . . . or approved equal," and added the requirement that the "sand must be dust free, rounded silc sand," an additional element of FieldTurf patent claims. Addendum 3 also required the bidder to state that the bid product did not violate any other manufacturer's patents. The specifications stated that substitutions were permitted, but required express approval.

SportFields complained that the amended specifications still did not clearly permit substitute products. The Architect for the School District stated that it was too late to

change the specifications, but that SportFields should "do the best it could" and submit a bid anyway. SportFields, FieldTurf, and others bid on the project. The School District announced that SportFields was the lowest bidder and that the project would be awarded to SportFields. The SportFields bid identified no substitution and requested no departure from the specifications, and contained no statement about patent infringement.

FieldTurf then wrote to SportFields and the School District, stating that SportFields' bid was an infringing "offer to sell" under 35 U.S.C. §271(a) ("whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent"). FieldTurf stated that it would enforce its patents against SportFields and the School District. The School District then rejected all of the bids, withdrew the RFP, and made further changes in the specifications. The new RFP replaced the sand and rubber infill with an all-rubber infill, which was a departure from the FieldTurf patents, and did not mention "FieldTurf . . . or approved equal." FieldTurf did not rebid, and the project was awarded to SportFields.

FieldTurf then sued SportFields for patent infringement based on the first bid, as an offer to sell under §271(a), and also charged SportFields with the torts of intentional interference with prospective economic advantage, and unfair competition under California law. SportFields denied infringement and filed counterclaims charging FieldTurf with intentional interference with prospective economic advantage and unfair competition. The district court held in favor of SportFields on its defense of noninfringement and on its counterclaims and awarded attorney fees to SportFields. FieldTurf appeals.

INFRINGEMENT

In 1994, 35 U.S.C. §271(a) was amended to include "offer to sell" as a ground of infringement, in order to harmonize this aspect of United States law with that of other nations. See Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1251-55 (Fed. Cir. 2000) (discussing the policies underlying the offer of sale provision). A bid to supply a product specified in a RFP is a traditional offer to sell. See Restatement (Second) of Contracts §63 cmt. f, ill. 13 (a "bid to supply goods to the Government" is an offer which is irrevocable upon the opening of bids). In Rotec, 215 F.3d at 1254-55 & n.3, this court observed that the Supreme Court in Pfaff v. Wells Electronics, Inc., 525 U.S. 55 (1998) applied traditional contract law principles to the on-sale aspects of §102(b), and reasoned that traditional contract law should also govern an offer of sale under §271(a).

The district court held that, on consideration of all the surrounding circumstances, SportFields' bid, while undoubtedly an offer of sale, was not an offer to sell the FieldTurf patented product because SportFields intended to sell its PerfecTurf non-infringing product and the School District knew that SportFields legally could not and would not provide an infringing product. FieldTurf argues that even if SportFields intended to change the product after it won the bid, this does not save SportFields from infringement because SportFields presented an unqualified offer of sale of the product of the specifications as then written in the RFP, and the bid did not contain the required statement that the bid product differed from the specifications. SportFields replies that it always intended that the product that would be installed would be SportFields' PerfecTurf, and provided testimony to that effect. FieldTurf argues that such testimony cannot alter the clear terms of an unambiguous written document. FieldTurf argues that SportFields made an unqualified offer to sell a

product that met the School District's specifications as then presented, and thus on its face infringed the FieldTurf patents. FieldTurf argues that the district court erred in considering the identity of the product that SportFields actually expected to provide, in deciding whether the offer was an infringement of the patent.

We conclude that the district court did not err in law, in considering the nature of the SportFields product that was intended and understood to be the product that would be installed, in holding that the bid was not an offer to sell an infringing product. The School District representatives were aware that SportFields' product differed from that of FieldTurf — indeed, FieldTurf emphasized those differences in its communications to the School District. The district court was not required to ignore these and other facts that showed that SportFields intended to offer and to install its PerfecTurf product, which is conceded not to literally infringe FieldTurf's patent claims. It is also relevant that when FieldTurf complained to the School District that SportFields' bid was for the FieldTurf patented product, the School District withdrew the RFP entirely and rejected all bids, thus avoiding the accrual of damages for infringement. The district court also interpreted the California statute to include an "or equal" provision when the specification designated a patented product. If this interpretation is correct (an issue we need not decide) then there was another reason for finding noninfringement.

On the undisputed facts and considering all of the circumstances, we affirm the district court's ruling that SportFields' bid was not an infringing offer to sell the FieldTurf product. Thus the judgment of noninfringement is affirmed.

COMMERCIAL TORTS

The district court held in favor of SportFields on its counterclaims that FieldTurf had committed the torts of intentional interference with prospective economic advantage and had engaged in an unfair business practice under California Business and Professions Code §17200.

California precedent describes the essential elements of the tort of intentional interference with prospective economic advantage as: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d 937, 950 (Cal. 2003). A plaintiff seeking to recover damages for this tort must prove "that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" Id. (quoting Della Penna v. Toyota Motor Sales, U.S.A., Inc., 902 P.2d 740, 751 (Cal. 1995)). The district court found that FieldTurf had interfered with SportFields' economic relationship with the School District as established by SportFields' status as low bidder, in demanding that SportFields withdraw its bid and that the School District not accept SportFields' bid, on pain of suit for patent infringement. The court described the aspects of FieldTurf's conduct that it deemed wrongful:

> FieldTurf "literally manufactured this case through its own willful, unfair actions" . . . . FieldTurf misled the school district with respect to its intention, and legal obligation, to provide an "open bidding" process; [w]rongfully caused the project specifications to include its patented elements; and when

> its plan failed, in that SportFields ultimately won the bid for the project, . . . brought this action based on the very same alleged infringement it created.

Although the district court was properly concerned with the conduct of the competition, we must conclude that the legal requirements of these commercial torts were not met. For example, accepting the district court's premise that FieldTurf encouraged the School District to place the FieldTurf product specifications in the RFP, the record shows that the School District and the Architect strongly supported this action, and wished to install the same turf system that FieldTurf had installed in a local park. Efforts of commercial entities to achieve specifications that favor their product are not illegal, absent fraud or deception. Although the district court found that FieldTurf had misled the School District with respect to "open bidding," the contract documents permitted product substitution and the School District was represented by professionals. We conclude that tortious interference by FieldTurf was not established as a matter of law, for it was not shown that FieldTurfs' conduct was "wrongful by some legal measure other than the fact of interference itself," a criterion explained in Della Penna, 902 P.2d at 751.

California Business and Professions Code §17200 defines unfair competition as including any "unlawful, unfair or fraudulent business act or practice." The district court ruled that the conduct discussed supra, supplemented by FieldTurf's infringement action, constituted an "unfair" business practice within the meaning of §17200.

It is not unfair competition for a patentee to enforce its patent against a competitor, for the patentee has the right to exclude others. See Concrete Unlimited v. Cementcraft, Inc., 776 F.2d 1537, 1539 (Fed. Cir. 1985) (holding that it is not unfair competition to threaten and sue a competitor for patent infringement). And as we have discussed, it

04-1553                                          8

generally is not illegal or unfair to seek to have one's product or product characteristics specified as a standard in procurement.

Thus we conclude that seeking to have a specification directed to a patented product is not generally tortious. SportFields contends, however, that California Public Contract Code §3400[2] bars sole source bidding and thus bars a specification that limits the bid to a patented product, and that FieldTurf wrongly convinced the School District to limit the bid to FieldTurf's product. We need not decide whether Code §3400 would bar a specification that describes a patented product. On the one hand, if the California statute is inapplicable, there was no statutory violation and hence no tort; and if on the other hand the statute is viewed as barring a limitation to a patented product, then the RFP provided an automatic "or equal" alternative. Under this view, FieldTurf never achieved an RFP specification that (1) included FieldTurf's specifications and (2) did not also contain an "or equal" provision. The initial RFP specified "FieldTurf . . . or approved equal." Addendum 1 continued to

---

2      California Public Contract Code §3400 (2004) provides:
   (a)  No agency of the state, nor any political subdivision, municipal corporation, or district, nor any public officer or person charged with the letting of contracts for the construction, alteration, or repair of public works, shall draft or cause to be drafted specifications for bids, in connection with the construction, alteration, or repair of public works, (1) in a manner that limits the bidding, directly or indirectly, to any one specific concern, or (2) calling for a designated material, product, thing, or service by specific brand or trade name unless the specification is followed by the words "or equal" so that bidders may furnish any equal material, product, thing, or service. . . .
   (b)  Subdivision (a) is not applicable if the awarding authority, or its designee, makes a finding that is described in the invitation for bids or request for proposals that a particular material, product, thing, or service is designated by specific brand or trade name for any of the following purposes: . . .
   (2) In order to match other products in use on a particular public improvement either completed or in the course of completion.
   (3) In order to obtain a necessary item that is only available from one source. . . .

specify "FieldTurf . . . or approved equal."  But in Addendum 3 the FieldTurf product designation was removed and, while the "or equal" language was removed from the specification by virtue of section 2.05 of the contract, there continued to be an automatic "or equal" provision by operation of law.  If the California statute applied, there could be no wrongful conduct here, where each time the bid specified the patented product there was an "or equal" option.

At the time of SportFields' bid on the RFP specifications as initially written, FieldTurf could reasonably have believed that SportFields was offering a product that infringed the FieldTurf patents, for the RFP was directed to the FieldTurf product characteristics, and SportFields did not include the mandated statement about patent infringement. Enforcement of a patent that is reasonably believed to be infringed is not an act of unfair competition.  See Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 897 (Fed. Cir. 1998) ("a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights").

The judgment that FieldTurf committed tortious interference and unfair competition is reversed.

## ATTORNEY FEES

The district court found the case to be "exceptional" and subject to 35 U.S.C. §285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.")  The district court reasoned that FieldTurf had "manufactured" the present litigation by seeking to include patented features in the bid specifications and then filing suit based on SportFields' bid.  The court held that FieldTurf's infringement suit against SportFields was "an integral part of FieldTurf's wrongful conduct."  The award of attorney fees is

reviewed to ascertain whether there was clear error in the threshold finding that this is an "exceptional case." See Pharmacia & Upjohn Co. v. Mylan Pharms., Inc., 182 F.3d 1356, 1359 (Fed. Cir. 1999).

In Pharmacia v. Mylan, 182 F.3d at 1361, this court cautioned that "the patentee should not automatically be penalized for pursuing a patent infringement action . . . . There must be some finding by the trial judge of unfairness, bad faith, inequitable conduct, vexatious litigation, or some similar exceptional circumstance." As discussed supra, FieldTurf's patent position was not without support. We do not discern the egregious action required by precedent to support fee-shifting. See Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1329 (Fed. Cir. 2003) (§285 is an exception to the "American Rule" concerning attorney fees, and is "limited to circumstances in which it is necessary to prevent 'a gross injustice'") (quoting Mach. Corp. of Am. v. Gullfiber AB, 774 F.2d 467, 472 (Fed. Cir. 1985)). We conclude that the district court clearly erred in deeming this to be an exceptional case under §285. The award of attorney fees is vacated.

Each party shall bear its costs on this appeal.

AFFIRMED-IN-PART, REVERSED-IN-PART, and VACATED-IN-PART