NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JAKE LEE,**
*Plaintiff-Appellee,*

**v.**

**MIKE'S NOVELTIES, INC. (doing business as Mike's Worldwide Imports) AND MANISCH CHANDER (also known as Mike Chander, Manisch Chandra, and Mike Chandra),**
*Defendants-Appellants.*

---

2013-1049

---

Appeal from the United States District Court for the Central District of California in No. 10-CV-2225, Judge John A. Kronstadt.

---

Decided: November 21, 2013

---

ANTHONY H. HANDAL, Handal & Morofsky, LLC, of Fairfield, Connecticut, argued for plaintiff-appellee.

LOUIS F. TERAN, SLC Law Group, of Pasadena, California, argued for defendants-appellants.

---

Before DYK, MOORE, and WALLACH, *Circuit Judges.*

DYK, *Circuit Judge*

Defendants Mike's Novelties, Inc., d.b.a. Mike's Worldwide Imports and Manisch Chander (collectively "MWI") appeal a judgment of the United States District Court for the Central District of California. The district court entered a judgment in favor of plaintiff Jake Lee ("Lee") after a jury found that MWI willfully infringed the asserted claims of U.S. Patent No. 6,418,936 ("the '936 patent"), rejected claims of invalidity, and awarded $40,000 in lost profits. Based on the willfulness finding, the district court awarded Lee enhanced damages of $70,000 under 35 U.S.C § 284. The court also awarded attorney's fees of $231,025 after making an exceptional case finding under 35 U.S.C. § 285 based on willful infringement and litigation misconduct. MWI appeals on multiple grounds, alleging, inter alia, that the district court erred in construing the asserted claims, and that the evidence was not sufficient to support the jury verdict of infringement. MWI also challenges the finding of willful infringement and the awards of enhanced damages and attorney fees.

We agree with the district court's claim construction and affirm the finding of infringement and no invalidity. However, we reverse the finding of willfulness because the defendant's non-infringement arguments were not objectively unreasonable. We accordingly reverse the award of enhanced damages. Because the district court's exceptional case finding relied on both the willfulness finding and a finding of litigation misconduct, we remand the case to the district court to determine whether the litigation misconduct considered alone would support an exceptional case finding and award of attorney fees.

BACKGROUND

The invention claimed in Lee's '936 patent is a metal tobacco pipe designed to resemble a Colt Six Shooter pistol. Figure 1 of the '936 patent, depicting the preferred embodiment of the claimed invention, is reproduced below. JA 89.



FIG. 1

The topmost part is a cylindrical brass turret, labeled 51, with multiple magazines for housing tobacco. '936 patent col. 1 ll. 7-11. The turret can be rotated so that the user can smoke tobacco held in any of the magazines. The turret sits on top of the manifold, labeled 20, which is made of a lighter material, such as aluminum. For smoke to pass from the magazines of the turret to the user, the magazines must stay aligned with openings in the manifold, which is connected to the hollow stem, shown by label 12. At the end of the stem is the mouthpiece, labeled 16. Although the turret can be rotated, it remains stationary relative to the manifold because it "is made of material heavier than that of the manifold." '936 patent col. 2 ll. 11-12. The weight differential thus ensures consistent alignment between turret and manifold so that smoke can pass through the stem when the user inhales.

The '936 patent includes two independent claims, claim 1 and claim 11, which use similar language to

describe the functional significance of the weight differential between the turret and manifold. The pertinent portion of independent claim 1 recites

> A metal tobacco pipe in its assembly comprising
>
> a manifold . . .
>
> a stem . . .
>
> a turret having a plurality of magazines rotatably mounted on said manifold . . .
>
> . . .
>
> whereby any one of said magazines . . . provides for inhalation of tobacco smoke through . . . said stem wherein said turret is of heavier weight than the weight of said manifold, such that said turret remains in a stationary [posi tion] upon said manifold in any particular relative rotation between said turret and said manifold.

'936 patent col. 6 ll. 53-56.[1]

---

[1] In full, claim 1 reads:

1. A metal tobacco pipe in its assembly comprising

a manifold having a body formation forming a port and a chamber communicating with said port and a recess in the body formation of said port,

a stem having a bore through which tobacco smoke is inhaled, said stem communicating with said chamber,

a turret having a plurality of magazines rotatably mounted on said manifold, each of said magazines communicable and aligned with said port and chamber by rotation of said turret to said manifold,

Independent claim 11 is limited to an improvement in a metal tobacco pipe with a "turret being of a heavier weight than that of the manifold so that both turret and manifold remain stationary relative to one another . . . ." '936 patent col. 7 ll. 34-37.[2] Both independent claims use

---

means for filtering tobacco smoke from tobacco in an aligned one of said magazines to said port and chamber seated in said recess,

means co-extensive in and between said turret and manifold forming a cavity, and

means joining together said turret and manifold disposed in the cavity,

said joining means comprising
 a member having a first bearing surface formed therein,
 a second bearing surface formed in said turret abutting said first bearing surface,
 whereby the abutment between said first and second bearing surfaces provides a non-binding relationship between said turret and manifold, and
 means below said first bearing surface for fastening said turret to said manifold,

whereby any one of said magazines aligned to said port and chamber upon rotation of turret to manifold provides for inhalation of tobacco smoke through said bore of said stem wherein said turret is of heavier weight than the weight of said manifold, such that said turret remains in a stationary upon said manifold in any particular relative rotation between said turret and said manifold.

'936 patent col. 6 ll. 22-56.

[2] In full, claim 11 reads:

11. In a metal tobacco pipe having a hollow stem communicating with a manifold that in-

the transitional term "comprising." '936 patent, col. 6 l. 22 & col. 7 l. 35.

Lee determined that MWI was infringing the claims of the '936 patent by offering to sell similar Six Shooter-style pipes with rotatable turrets. Lee sued MWI for infringement on March 26, 2010, in the United States District Court for the Central District of California, alleging, inter alia, that the defendants "used, offered for sale and sold tobacco pipes that infringe the [']936 patent in California and nationwide." JA 167. One of the accused pipes had a ball and spring assembly, which exerts additional pressure against the turret, but the other did not. MWI proposed a claim construction requiring the turret to be "maintained in a stationary position relative to the manifold *only* by the frictional forces between the turret and manifold and *not* by a spring, pin, and/or any other mechanical interference." JA 233 (emphases added). The district court rejected that construction. Instead, both at the Markman hearing and at trial, the claims were construed as written. The jury was instructed that the asserted claims should be "construed as [they are] written and readily apparent to a person with ordinary skill in

cludes a chamber for communicating with one of a plurality in a turret of magazines containing tobacco for smoking, the turret fastened to and rotatably mounted on said manifold,
    the improvement comprising
        the turret being of a heavier weight than that of the manifold so that both turret and manifold remain stationary relative to one another after relative rotation between them has taken place to communicate one of the magazines with the manifold's chamber.
'936 patent col. 7 ll. 29-40.

the art by the application of widely accepted meanings of commonly understood words." JA 54.

The jury concluded that the accused devices infringed claims of the '936 patent and that MWI's infringement was willful. The jury also found the asserted claims not invalid for enablement, best mode, obviousness, or public use. The court awarded enhanced damages based on the jury's finding of willful infringement. The court also awarded attorney fees after determining that the case was exceptional in light of MWI's willful infringement and litigation misconduct, consisting of bad faith settlement offers, bad faith conduct during discovery, and threats to report Lee's counsel to state bar associations. MWI appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I. Claim Construction

MWI first contends that the district court's claim construction was erroneous because it precluded the jury from finding non-infringement based on the fact that the spring and ball assembly in one of the accused devices kept the turret stationary instead of the weight differential between the turret and the manifold. MWI argues that it was also precluded from presenting evidence and arguing in support of its theory of non-infringement. MWI asserts that, under the correct claim construction, there could be no infringement because the spring, not the weight differential, kept the turret stationary in one of the accused devices. Claim construction is an issue of law reviewed de novo. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454-55 (Fed. Cir. 1998).

The claim construction question turns on the meaning of the weight differential limitation, which in claim 1 requires the turret to be "of heavier weight than the

weight of said manifold, such that said turret remains in a stationary [position] upon said manifold in any particular relative rotation between said turret and said manifold." '935 patent col. 6 ll. 52-56. Claim 11 similarly describes the turret as "being of a heavier weight than that of the manifold so that both turret and manifold remain stationary relative to one another." '936 patent col. 7 ll. 36-38. At the *Markman* hearing, the district court rejected MWI's proposed construction that the "turret is maintained in a stationary position relative to the manifold *only* by the frictional forces between the turret and manifold and *not by a spring and/or pin*." JA 235 (emphasis added). The district court, both at the *Markman* hearing and in the final jury instruction, construed the claim language simply "as it is written." JA 230. We see no error in the district court's rejection of MWI's proposed construction.[3]

The specification of Lee's patent, like the claims themselves, states that "[t]he turret is made of material heavier than that of the manifold." '936 patent col. 2 ll. 10-11. The specification also explains that "[t]he heavier weight of [the] turret maintains its position upon the less-weighted manifold whereby the desired tobacco-filled magazine disposed over port [in the manifold] remains

---

[3]    Lee argues that MWI waived any challenge to the claim construction by not objecting to the construction in connection with the jury instruction. But we have held that raising a claim construction issue at the *Markman* hearing is sufficient to preserve the objection. *See, e.g.*, *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1381 (Fed. Cir. 2004) ("When the claim construction is resolved pre-trial, and the patentee presented the same position in the *Markman* proceeding as is now pressed, a further objection to the district court's pre-trial ruling may indeed have been not only futile but unnecessary.").

stationary . . . ." '936 patent col. 5 ll. 46-50. The claims and specification indicate that the turret remains stationary relative to the manifold because of its heavier weight relative to the manifold.

Additionally, independent claims 1 and 11 use the transitional term "comprising." '936 patent col. 6 l. 22 & col. 7 l. 34. We have established that "[i]n the patent claim context[,] the term 'comprising' is well understood to mean 'including but not limited to.'" *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007); *see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 811 (Fed. Cir. 1999) (citing *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1178 (Fed. Cir. 1991); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986)). Because both independent claims 1 and 11 use the term "comprising," they read on devices that include additional features beyond those claimed. Based on that claim language, infringement cannot be avoided by adding another feature that contributes to the turret's stability if the weight differential is nevertheless sufficient to keep the turret stationary. MWI's proposed construction would have limited the claims to read on devices with turrets held stationary solely because of the weight differential. The district court did not err in rejecting that construction.[4]

## II. Infringement

MWI next challenges the sufficiency of the evidence supporting the jury verdict of infringement. Infringement is a question of fact that we review for substantial evidence when tried before a jury. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002). To find

---

[4] We fail to see any impropriety in Lee's counsel's stating in closing argument that "the addition of a ball and spring does not avoid infringement." JA 577.

infringement, the finder of fact must compare the invention claimed in the patent with the accused device. *Id.* Substantial evidence requires evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1324 (internal quotation omitted).

Under the claim language incorporated into the jury instructions, the patentee had to prove that the weight differential between the turret and manifold in MWI's pipes, standing alone, would be sufficient to keep the turret stationary relative to the manifold. Although Lee did not introduce tests to make that showing, it introduced sufficient evidence for the jury to conduct a factual comparison between the claimed invention and the accused devices. During his testimony, Lee weighed one of the accused devices, the pipe without the ball and spring, and showed that the turret weighed 68 grams and the manifold 55 grams, a difference of 13 grams, and testified that the weight differential "promoted" a stationary position. JA 457. Although the other accused pipe, which contained a ball and spring, was not weighed, the jurors had the opportunity to handle both pipes and compare the relative weights of the components for themselves. They could also place the turret on top of the manifold to determine whether the weight differential created stability. While the weight differential was not overwhelming, the jury had adequate evidence from which to conclude that it was sufficient to ensure stability.[5]

---

[5]    MWI argues that the district court violated the local rules in allowing Lee to assert infringement against the pipe without the spring, but we find no abuse of discretion in the district court's determination that no prejudice would result from allowing the claim of infringement as to both pipes to proceed.

MWI argues that expert testimony was required, and points out that Lee presented no expert testimony during trial. Although no experts testified, the technology involved was easily understandable and did not require technical expertise or specialized knowledge. Expert testimony is not necessary in patent cases involving technology that is "easily understandable." *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1369 (Fed. Cir. 2004) ("[E]xpert testimony will not be necessary because the technology will be 'easily understandable without the need for expert explanatory testimony.'") (quoting *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984) (no expert testimony needed to explain technology involving plastic bags)). Here, the disputed facts pertained to: (1) the weight differential between the turret and manifold, and (2) its sufficiency in keeping the turret in place. No expert testimony was required to explain how to measure the weight differential or the fact that a heavier object would be more likely to remain stationary. The court did not err in expecting the jury to understand these concepts without expert testimony. Handling the pipes allowed jurors to estimate the weight differential in the pipe that the patentee did not weigh, and the sufficiency of the weight differential in keeping the turret stationary.

As to the question of the sale of the pipe without the ball and spring, Lee's employee testified that she ordered the Six Shooter-style pipes from MWI, and Lee stated that he had previously seen MWI selling a pipe without a ball and spring. MWI's witness testified that he did not sell such a pipe, and only sold the accused pipe with a ball and spring. The jury could reasonably conclude, based on determinations about the credibility of the witnesses, that MWI did in fact sell such a pipe. We see no reason to overturn the jury's implicit finding of fact that MWI did sell the accused pipe without the ball and spring.

While reasonable minds could have reached a different conclusion as to the evidence of infringement, substantial evidence supported the jury verdict. We therefore affirm the judgment of infringement.

## III. Invalidity

MWI also raises a number of arguments as to invalidity, alleging that the '936 patent does not disclose the best mode of the patented invention or provide sufficient information to enable those skilled in the art to make and use the invention. It also alleges that the claimed invention was obvious in view of the prior art and in public use more than a year before the '936 patent's effective date. We find those arguments to be without merit and sustain the jury verdicts of no invalidity on those grounds.

## IV. Enhanced Damages

In the context of patent infringement, "an award of enhanced damages *requires* a showing of willful infringement." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (emphasis added) (citing *Beatrice Foods Co. v. New Eng. Printing & Lithographing Co.*, 923 F.2d 1576, 1578 (Fed. Cir. 1991)); *see also* 35 U.S.C. § 284 (permitting courts to award up to treble damages in enhanced damages). Although an enhanced damages award must be predicated on willful infringement, "a finding of willfulness does not require an award of enhanced damages; it merely permits it." *Seagate*, 497 F.3d at 1368.

Under *Seagate*, patentees must satisfy a two-pronged test for willfulness, one prong of which is objective, and the other prong of which is subjective. *See, e.g.*, *Bard Peripheral Vascular, Inc., v. W.L. Gore & Assoc., Inc.*, 682 F.3d 1003, 1006 (Fed. Cir. 2012); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011). To meet the first prong, patentees must show "by clear and con-

vincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Seagate*, 497 F.3d at 1371. If the patentee satisfies that test, he must satisfy the second prong by showing that the accused infringer subjectively knew of the "objectively-defined risk" or should have known because the risk was so obvious. *Id.* The objectiveness inquiry is a question of law reviewed de novo. *Bard*, 682 F.3d at 1007.

The threshold inquiry into objective recklessness "entails an objective assessment of potential defenses based on the risk presented by the patent." *Id.* at 1006. When an "accused infringer relies on a reasonable defense to a charge of infringement," the risk of infringement is not high enough to satisfy the objective prong of the willfulness inquiry. *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010) (defendant was not objectively reckless in relying on "reasonable" obviousness defense). Because the objective inquiry is a question of law, if the court decides that "the infringer's reliance on a defense was not objectively reckless, it cannot send the question of willfulness to the jury." *Powell*, 663 F.3d at 1236.

Although MWI raised a number of invalidity and non-infringement theories, we focus on the objective reasonableness of its infringement defense. As the district court explained in its summary judgment order, there was a "genuine issue of material fact as to whether the turret remains stationary because the turret is heavier than the manifold" and therefore infringed the limitations of claims 1 and 11. JA 240. MWI argued at trial that Lee had not proven that the weight differential between the manifold and turret of the accused pipes was enough to keep the turret stationary, as the district court's claim construction required. When asked at oral argument in this court why it was unreasonable for MWI to argue that

the weight differential was insufficient to ensure stability, Lee's counsel stated, "that would be a reasonable argument." *See* Oral Argument at 16:45-16:48, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2013-1049/all. He offered no explanation why such an argument would be objectively unreasonable other than the fact that the jury reached the opposite conclusion.

To be sure, it was reasonable for the jury to conclude that the turret remained stationary relative to the manifold because of the weight differential, but that does not make the accused infringer's defense objectively unreasonable. In this case, the evidence was close, and the critical factual determinations were left in the jury's hands. The verdict was supported by substantial evidence, but there was countervailing evidence to support the defendant's theory as well. The weight differential amounted to only 13 grams, which the jury might have considered insufficient. Moreover, Lee only weighed one of the two pipes and as the above discussion indicates, the jury could have reasonably concluded that MWI did not sell that pipe. Therefore, it was reasonable for MWI to contest the allegation of infringement and to argue that the plaintiff had not proven that the "weight differential actually maintains the turret [in a] stationary [position]" in either accused device. JA 606, ll. 4-5.

Because MWI's defense was not objectively unreasonable, the first prong of the *Seagate* test for willfulness was not satisfied. Consequently, we reverse the finding of willful infringement. Because enhanced damages cannot be awarded without a finding of willfulness, we vacate the award of enhanced damages.

## V. Attorney's Fees

Section 285 provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing

party." 35 U.S.C. § 285. Determining whether to award attorney fees under § 285 requires a two-step analysis in which the court first decides whether the prevailing party has shown by clear and convincing evidence that the case is "exceptional." *Forest Labs., Inc. v. Abbot Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003). If the court makes an exceptional case finding, it must then decide whether an award of attorney fees is appropriate. *Id.* at 1328. We have "repeatedly identified as 'exceptional' those cases involving 'inequitable conduct before the [Patent Office]; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement.'" *Id.* at 1329 (quoting *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001)) (alteration in original). We review the district court's application of the proper legal standard de novo, its exceptional case finding for clear error, and its decision that attorney fees are appropriate for abuse of discretion. *See id.* at 1328; *see also Cybor Corp. v. FAS Tech., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998).

The district court relied on both the finding of jury willful infringement and its finding of litigation misconduct in determining that this case was exceptional. The instances of litigation misconduct supporting the award of attorney's fees included MWI's bad faith settlement offers, bad faith conduct during discovery, and unacted-upon threats to report Lee's counsel to state bar associations. MWI only challenges the district court's litigation misconduct finding with respect to the settlement offers. The district court did not clearly err in finding that MWI's "settlement offers, combined with intimidating language, are evidence of bad faith litigation tactics." JA 27. Moreover, the court only described the settlement offers as supporting an award of attorney's fees. As to the allegations of bad faith during discovery and threats to report Lee's counsel, the court expressly stated that these in-

stances of misconduct were not sufficient, standing alone, to justify an award of attorney's fees.

Although the court described MWI's litigation misconduct as "evidenc[ing] some bad faith," it only made an exceptional case finding "[a]fter considering the totality of the circumstances, including the jury's finding of willfulness." JA 28. The district court thus based its exceptional case finding not only on findings of MWI's litigation misconduct, which we sustain, but also on the finding of willful infringement, which, as discussed above, cannot stand. As a result, it is not clear that the district court would have considered this to be an exceptional case warranting an award of attorney's fees based solely on MWI's litigation misconduct.

Therefore, we affirm the judgment of infringement and no invalidity, reverse the determination of willful infringement and award of enhanced damages, and remand to the district court to determine whether MWI's litigation misconduct is independently sufficient to make this an exceptional case such that attorney's fees are warranted.

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Each party to bear its own costs.