# United States Court of Appeals for the Federal Circuit

2006-1571, -1598

ADENTA GMBH, DR. WOLFGANG HEISER,
and CLAUS SCHENDELL,

Plaintiffs-Cross Appellants,

v.

ORTHOARM, INC.

Defendant-Appellant,

and

AMERICAN ORTHODONTICS CORPORATION,

Defendant.

John P. Fredrickson, Boyle Fredrickson Newholm Stein & Gratz, S.C., of New York, New York, argued for plaintiffs-cross appellants.

Thomas S. Reynolds II, Michael Best & Friedrich LLP, of Milwaukee, Wisconsin, argued for defendant-appellant. With him on the brief was Timothy M. Hansen.

Appealed from: United States District Court for the Eastern District of Wisconsin

Senior Judge Thomas J. Curran

# United States Court of Appeals for the Federal Circuit

2006-1571, -1598

ADENTA GMBH, DR. WOLFGANG HEISER,
and CLAUS SCHENDELL,

Plaintiffs-Cross Appellants,

v.

ORTHOARM, INC.,

Defendant-Appellant,

and

AMERICAN ORTHODONTICS CORPORATION,

Defendant.

_____

DECIDED: September 19, 2007

_____

Before MICHEL, <u>Chief Judge</u>, LOURIE, <u>Circuit Judge</u>, and ROBERTSON, <u>District Judge</u>.[*]

LOURIE, <u>Circuit Judge</u>.

OrthoArm, Inc. appeals from the decisions of the United States District Court for the Eastern District of Wisconsin denying its motion to dismiss this case for lack of subject matter jurisdiction and its motion, following a jury verdict, for judgment as a

---

[*]    Honorable James Robertson, District Judge, United States District Court for the District of Columbia, sitting by designation.

matter of law that claims 1-8 and 10-13 of U.S. Patent 6,257,883 (the "'883 patent") are not invalid. Adenta GmBH v. OrthoArm, No. 04-C-905 (E.D. Wis. Jan. 20, 2006) (Jurisdiction Order); Adenta GmBH v. OrthoArm, No. 04-C-905 (E.D. Wis. July 11, 2006) (JMOL Order). Adenta GmBH, Dr. Wolfgang Heiser, and Claus Schendell cross-appeal from the decision of the district court denying their request for a declaratory judgment that the case is exceptional. Because we determine that a case or controversy exists, we affirm the decision of the district court denying the motion to dismiss for lack of subject matter jurisdiction. Because we determine that substantial evidence exists in the record supporting the jury's verdict that the asserted claims of the '883 patent are invalid based on a public use or sale under 35 U.S.C. § 102(b), we affirm the decision of the district court denying the motion for judgment as a matter of law. We affirm the district court's decision that no inequitable conduct was shown, and we also affirm the decision of the district court denying Adenta's motion to declare the case exceptional.

## BACKGROUND

The '883 patent is directed to an orthodontic bracket. Orthodontic brackets are structures that adhere to the surface of a patient's tooth and together with an archwire comprise what is commonly referred to as "braces." The patented bracket includes a means for opening a clip that holds the archwire in place. The inventor of the '883 patent is Dr. John Voudouris, who was the president of OrthoArm. Voudouris assigned the patent to OrthoArm. In 2001, OrthoArm sued American Orthodontics Corporation ("American") for infringement of the patent based on American's sale of brackets. American manufactured and distributed brackets for Adenta GmBH ("Adenta"). Instead of proceeding with the litigation, American and OrthoArm entered into a Mutual

Settlement Agreement (the "Settlement Agreement"), wherein OrthoArm assigned the '883 patent to American, and American agreed to pay OrthoArm a four percent royalty on its sales of a bracket, known as the Time bracket.

Thereafter, American asked Adenta to pay a part of the royalty obligation that it owed to OrthoArm under the Settlement Agreement. American and Adenta accordingly entered into a Royalty Sharing Agreement, wherein each party agreed to pay OrthoArm half of the four percent royalty obligation on sales of the Time bracket. American and Adenta also entered into a License Agreement that gave Adenta a license to sell another version of a bracket, known as the Evolution bracket. Under the terms of the License Agreement, Adenta owed American a four percent royalty on sales of the Evolution bracket.

Adenta later advised American and OrthoArm that it believed that the '883 patent was invalid and that it would stop paying royalties on sales of both the Time and Evolution brackets. American responded with a letter stating that a failure to pay royalties would constitute a breach of the License Agreement, and that in the event of such a breach, American would "pursue its available legal remedies to protect its rights" (the "American Letter"). Adenta thereafter filed a complaint in the District Court for the Eastern District of Wisconsin seeking a declaratory judgment that the '883 patent is invalid and unenforceable. Adenta alleged that the district court had subject matter jurisdiction because the American Letter constituted a threat of an imminent patent infringement suit. Adenta also alleged that the '883 patent was invalid on the ground that Wolfgang Heiser, an Austrian orthodontist, and Claus Schendell, Adenta's president, had publicly displayed or offered for sale a Time bracket at a Florida trade

show in 1994.  Adenta also alleged that the '883 patent was unenforceable based on improper inventorship and that inventor Voudouris allegedly knew of the Time bracket, but failed to disclose it to the United States Patent and Trademark Office ("PTO") during prosecution of the '883 patent.

OrthoArm moved to dismiss the suit for lack of subject matter jurisdiction on the ground that Adenta never had a reasonable apprehension that it would be sued by American, and that Adenta and American conspired to contest the validity of the '883 patent. The district court noted that it could not "resolve the suit" without more documentation, but denied OrthoArm's motion to dismiss.  Thereafter, OrthoArm filed a renewed motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  After further consideration of the jurisdictional issue, the court denied the renewed motion.  The case proceeded to trial on the invalidity and unenforceability issues.

During trial, Adenta argued that the claims of the '883 patent were invalid based on the public use or sale of its orthodontic bracket in 1994 at the 84th Annual Session of the American Association of Orthodontists in Orlando, Florida (the "Florida trade show"), which was held more than one year before the priority date of the '883 patent.  The parties agreed that Exhibit 61, which was a photo of a bracket, represented the type of Time bracket that was allegedly shown at the trade show.  Adenta presented testimony from five witnesses to verify that the type of bracket as depicted in Exhibit 61 was in fact displayed at the 1994 Florida trade show.  Those witnesses were Schendell and Heiser, who worked at Adenta; John Russell, who was a sales representative for Adenta's

brackets in England; Lee Tuneberg, who was a vice president at American; and inventor Voudouris.

Adenta also presented various documents to support its claim that the Time bracket of the type shown in Exhibit 61 was displayed at the 1994 Florida trade show. Those documents included: drawings of a bracket made by Heiser in 1992 and 1993 (Exhibit 23); a German patent application that disclosed the Time bracket filed March 3, 1994 (Exhibit 52); the Florida Conference Exhibitor Guide (Exhibit 77); a fax dated June 1994 from Russell to Schendell that asked if Heiser would come to Britain to discuss the Time bracket (Exhibit 12); a German article that included photos of the Time bracket (Exhibit 7); and a letter from Adenta's German patent attorney to Adenta's U.S. Patent attorney instructing the U.S. attorney to file an application on the Time bracket within a year of the 1994 Florida trade show (Exhibit 24).

The jury returned a verdict in favor of Adenta, finding that claims 1-8 and 10-13 of the '883 patent were invalidated by Adenta's public use or sale of its bracket at the 1994 Florida trade show. The jury also found that there was no showing of inequitable conduct because Voudouris did not withhold material information from the PTO.

OrthoArm filed a motion for judgment as a matter of law asserting that Adenta had not met its clear and convincing burden to show that the asserted claims of the '883 patent were invalid. OrthoArm contended that all the witnesses that Adenta presented at trial were interested witnesses and that their oral testimony was not corroborated by any documentary evidence. The district court denied OrthoArm's motion for judgment as a matter of law. The court noted that during trial Heiser and Schendell, who developed Adenta's bracket, testified that their bracket was on sale at the Florida trade

show. The court stated that they clearly were interested parties. The court found, however, that their testimony was corroborated by the testimony of Voudouris, Russell, and Tuneberg, who were not interested witnesses.

The district court observed that Voudouris was the president of OrthoArm and the inventor of the '883 patent, and that he testified that he attended the Florida trade show. The court also noted that Russell was the sales representative for Adenta's brackets in England and testified that sales of Adenta products accounted for only three percent of his company's sales. The court determined that Russell's interest in Adenta was thus not sufficient to discredit his testimony that the Time bracket was displayed at the 1994 Florida trade show. The court next determined that Tuneberg, who was Vice President of Research and Product Development at American, was not an interested witness, and he had confirmed that Adenta's bracket was on sale at the 1994 Florida trade show. In fact, when asked during trial whether American would benefit from invalidating the '883 patent, the court pointed out that Tuneberg responded that "it's impossible to say that we will benefit or not benefit."

In addition to the oral testimony, the district court noted that the following documents were offered to corroborate Adenta's position: Exhibit 23 (Heiser drawings); Exhibit 52 (German patent application); Exhibit 77 (Florida Conference Exhibitor Guide); Exhibit 12 (Fax from John Russell to Adenta); Exhibit 7 (article); and Exhibit 24 (Koerner Letter to U.S. patent attorney Charles Mueller). The court observed that although none of those documents was strictly contemporaneous with the 1994 Florida trade show, they were created shortly before or after the show. The court determined that given the quality and quantity of the evidence, a reasonable fact finder could conclude that clear

and convincing evidence showed that Adenta's Time bracket was publicly used or on sale at the 1994 Florida trade show. Thus, the court concluded that it would not disturb the jury's verdict.

The district court thereafter denied Adenta's request for a declaratory judgment that the case was exceptional. The court determined that, even if the jury may have erred in finding that no material information was withheld from the examiner during prosecution of the '883 patent, inequitable conduct was still not shown because there was insufficient evidence of intent to deceive the PTO. The court thus concluded that the case was not exceptional.

OrthoArm timely appealed, and Adenta timely cross-appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review a denial of a motion to dismiss for lack of subject matter jurisdiction de novo. Gen-Probe Inc. v. Vysis, Inc., 359 F.3d 1376, 1379 (Fed. Cir. 2004). "Whether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." MedImmune, Inc. v. Centocor, Inc., 409 F.3d 1376, 1378 (Fed. Cir. 2005) (citations omitted), rev'd on other grounds, 127 S.Ct. 764 (2007).

Whether a patent is invalid for a public use or sale is a question of law, reviewed de novo, based on underlying facts, reviewed for substantial evidence following a jury verdict. Minn. Mining & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1301 (Fed. Cir. 2002). The determination whether a case is exceptional is a question of fact, reviewed for clear error. Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1328 (Fed. Cir. 2003).

A.     Subject Matter Jurisdiction

On appeal, OrthoArm argues that the district court lacked subject matter jurisdiction to decide this case.  OrthoArm notes that the court itself stated that it lacked adequate information to decide the jurisdictional issue, but then proceeded to deny OrthoArm's motion, thereby improperly assuming jurisdiction.  OrthoArm further argues that the court lacked subject matter jurisdiction to decide the case because the American Letter did not create in Adenta a reasonable apprehension of an imminent infringement suit.  According to OrthoArm, the American Letter only stated that American would pursue its available legal remedies in the event of a breach of the License Agreement, not that it would file an infringement suit.  Moreover, OrthoArm alleges that American and Adenta's interests were aligned in attempting to invalidate the '883 patent.  According to OrthoArm, the parties did not have adverse legal interests because both parties would benefit from having the '883 patent invalidated by not having to make royalty payments to OrthoArm.

Adenta responds that after the initial motion to dismiss was denied, OrthoArm filed a renewed motion to dismiss for lack of jurisdiction, which the court again denied after further consideration.  Adenta argues that the court properly considered the evidence and denied the motion to dismiss, thereby correctly concluding that it did have subject matter jurisdiction.  Adenta further responds that it did have a reasonable apprehension of an infringement suit.  According to Adenta, the American Letter stated that American would "pursue its available legal remedies" if Adenta stopped making royalty payments.  Adenta asserts that such a statement was sufficient to create an apprehension of suit.  Adenta further responds that even if OrthoArm did not intend to

assert an infringement claim, the letter still created a reasonable apprehension of an imminent lawsuit.

We agree with Adenta that the district court did not err in denying the motion to dismiss for lack of subject matter jurisdiction and concluding that declaratory judgment jurisdiction existed in this case. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case or controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The Supreme Court recently reiterated that the phrase "'case or actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." MedImmune, Inc. v. Genentech, Inc., 127 S. Ct 764, 771 (2007). The Court further stated that "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. at 771 (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). In a post-MedImmune decision, we explained that the "Supreme Court's opinion in MedImmune represents a rejection of our reasonable apprehension of suit test." SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1380 (Fed. Cir. 2007). We further explained that "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without a license under the patent, an Article III case or controversy will arise and the party need not risk a suit

for infringement by engaging in the identified activity before seeking a declaration of its legal rights." Id. at 1381.

With the Supreme Court's decision as our guide, and following MedImmune, we conclude that Adenta established an Article III case or controversy that gave rise to declaratory judgment jurisdiction. After obtaining legal advice, Adenta advised American that it believed that the '883 patent was invalid and that it would not pay any further royalties on sales of the Time and Evolution brackets. American responded indicating that if Adenta breached its license with Adenta by not paying royalties, it would "pursue its available legal remedies." Thus, American indicated its intent to assert its rights under the '883 patent in the event that Adenta failed to pay royalties under the terms of the License Agreement, thereby creating a substantial controversy. Adenta did in fact stop paying royalties to American on sales of the Evolution bracket. See MedImmune, 127 S. Ct. at 772 ("There is no dispute that [the case-or-controversy requirement of a declaratory judgment action] would have been satisfied if petitioner had taken the final step of refusing to make royalty payments under the 1997 license agreement."). Moreover, Adenta identified that its Time bracket had been the subject of a prior infringement lawsuit by OrthoArm against American. Contrary to what OrthoArm argues, the failure of American to file an infringement counterclaim in response to the declaratory judgment action did not deprive the court of jurisdiction. See Capo, Inc. v. Dioptics Med. Prods., Inc., 387 F.3d 1352, 1356 (Fed. Cir. 2004). Moreover, the court found that American and Adenta did not contrive to invalidate the '887 patent; their interests were adverse, and we do not see any reason to disturb that finding. Given the facts alleged, it was proper for the court to deny the motion to dismiss for lack of

jurisdiction and to conclude that a case or controversy existed within the meaning of the Declaratory Judgment Act.

B.    Invalidity under § 102(b)

On the merits, OrthoArm argues that Adenta failed to present clear and convincing evidence that the asserted claims of the '883 patent were invalid because of the public use or sale of Adenta's bracket at the 1994 Florida trade show. OrthoArm asserts that the oral testimony that the Time bracket was displayed at the trade show came from four witnesses, all of whom were interested witnesses because they would benefit from invalidation of the '883 patent. According to OrthoArm, Schendell and Heiser were interested witnesses because they were parties to the lawsuit, Russell was an interested witness because he was Adenta's exclusive representative, and Tuneberg was an interested witness because he admitted that if Adenta won the lawsuit, his company would no longer pay royalties. OrthoArm further argues that when all the witnesses are interested, further corroborating documentary evidence is required to invalidate a patent, and that there was no such evidence in this case. According to OrthoArm, none of the documentary evidence produced at trial corroborated the witnesses' testimony that Adenta publicly used or sold a bracket at the 1994 Florida trade show.

Adenta responds that there was ample evidence to support the jury's verdict that Adenta's Time bracket was publicly used or on sale at the 1994 Florida trade show. Adenta asserts that Heiser and Schendell testified that the Time bracket was displayed at the 1994 Florida trade show and that Russell's and Tuneberg's testimony was corroborating. Adenta asserts that the court correctly determined that Russell was not

an interested witness because he sold the Time bracket in England, not America, and Tuneberg was not an interested witness because he was American's Vice President and he acknowledged that invalidating the patent would not benefit American. Even if Russell or Tuneberg were interested witnesses, Adenta asserts that their testimony can be used to corroborate the testimony of inventor Voudouris. Moreover, Adenta asserts that sufficient documentary evidence corroborated the oral testimony.

We agree with Adenta that substantial evidence existed in the record to support the jury's verdict that a Time bracket was publicly used or on sale at the 1994 Florida trade show. Patents are presumed valid by statute. See 35 U.S.C. § 282. "The burden is on the party asserting invalidity to prove it with facts supported by clear and convincing evidence." SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n, 718 F.2d 365, 375 (Fed. Cir. 1983). To sustain an invalidity determination under § 102(b) for a public use or sale, "the record must show that an embodiment of the patented invention was in public use [or on sale] as defined by the statute before the critical date." Motionless Keyboard Co. v. Microsoft Corp., 486 F.3d 1376, 1383 (Fed. Cir. 2007). Moreover, a public use includes "any [public] use of [the claimed invention] by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." In re Smith, 714 F.2d 1127, 1134 (Fed. Cir. 1983).

OrthoArm does not challenge whether Adenta's Time bracket contains all the limitations of the claims of the '883 patent. Nor does it challenge whether Adenta's bracket, if in fact shown at the 1994 Florida trade show, would constitute a public use or offer for sale more than one year before the patent's priority date. OrthoArm only takes issue with whether there was clear and convincing evidence presented to the jury that

the type of bracket shown in Exhibit 61 was in fact displayed or on sale at the Florida trade show.

We have held that a patent cannot be invalidated based on one person's testimony alone without corroborating evidence, particularly documentary evidence. See Finnigan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354, 1369 (Fed. Cir. 1999) ("[C]orroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest."). However, this is not a case where one person makes a naked, unsupported assertion years after the fact that he made an invention before a patentee. Such self-serving statements based only on memory and susceptible to interpretations favorable to the witness are properly discounted. Here there were a number of statements made by different witnesses, all corroborating each other, accompanied by various supportive and consistent documents. The testimony of the witnesses together with the documentary evidence provided a coherent and convincing story.

Contrary to what OrthoArm argues, this case does not present the question of the necessity of corroboration—there was both testimonial and documentary corroborating evidence here. Rather, this case questions the sufficiency of the corroborating evidence. Assessing the sufficiency of evidence which corroborates a witness's testimony concerning invalidating activities has been analyzed under the "rule of reason" test, and it is a jury question. Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368, 1371 (Fed. Cir. 1998). A "rule of reason" analysis involves an assessment of the totality of the circumstances including an evaluation of all pertinent evidence. Id. OrthoArm attempts to discredit each piece of evidence, one by one, to

show that clear and convincing evidence invalidating the patent was lacking. However, the jury considered all the evidence. We cannot say that the court erred in concluding that there was sufficient evidence corroborating Heiser's and Schendell's testimony to enable the jury to find that the Time bracket was publicly used and/or on sale at the 1994 Florida trade show.

As the district court pointed out, Adenta presented testimony from five witnesses—Heiser, Schendell, Voudouris, Russell, and Tuneberg—who testified that they saw Adenta's Time bracket displayed at the 1994 Florida trade show. While the court determined that Heiser and Schendell were clearly interested parties, as they were named parties to the suit, their testimony was corroborated by the testimony of Voudouris, Russell, and Tuneberg. The court noted that Voudouris was the named inventor of the '883 patent and president of OrthoArm. He attended the 1994 trade show and testified that it was his understanding that Adenta's patent covers the brackets displayed at the Florida trade show. The court further noted that Russell was the sales representative for Adenta's brackets in England and testified that at the trade show, Schendell told him that "he was launching a new product, [a] self-ligating bracket." The court further determined that Tuneberg, who was a vice president at American, was not an interested witness and that he confirmed that Adenta's bracket was on sale at the trade show. The court made credibility determinations as to those witnesses, and we have no basis to disturb them.

The district court also noted that in addition to the oral testimony, Adenta offered the following documents to corroborate its position: a fax transmitted in 1992 containing drawings by Heiser of a bracket similar to the one displayed at the trade show; a

German patent application, filed March 3, 1994, that included an embodiment of the bracket of the type alleged to have been shown at the trade show; a fax, dated June 25, 1994, from Russell to Schendell asking whether Heiser would be willing to come to Britain to present his new Time bracket; an article authored by Heiser in 1998 that showed the Time bracket with photos of that bracket being applied to a patient, dated in 1994; a letter, dated April 1995, from Adenta's German lawyer informing Mueller, the U.S. patent attorney, that a bracket had been shown in May 1994 at the Florida trade show and instructing that a U.S. patent application must be filed within one year of that date.

Considering all the evidence presented, we agree with the district court that a reasonable fact finder could have concluded that clear and convincing evidence showed that a public use or sale of the Time bracket occurred at the 1994 Florida trade show. The letter from the German attorney to the U.S. patent attorney clearly stated that a bracket was shown at an exhibition in May 1994, and thus that a patent application should be filed within one year to avoid a public use or on sale bar. Although OrthoArm attempts to discredit that letter, arguing that it does not make clear which bracket the attorneys were referring to, we do not find the letter to be insufficient. The German attorney must have thought that it was the same bracket that was shown at the 1994 Florida trade show that would be filed in a corresponding U.S. application. Otherwise, there would have been no reason for the German attorney to have instructed Adenta's U.S. attorney to file the application within one year of the trade show. That application, which was filed in April 1995 and ultimately issued to Adenta in October 1996 as U.S.

Patent 5,562,444 (the "'444 patent"), includes the same drawings contained in the German patent application.

In sum, the district court correctly denied OrthoArm's motion for judgment as a matter of law, concluding that the evidence in its entirety was sufficient to enable the jury to find that Adenta's Time bracket was displayed at the 1994 trade show, thereby sustaining the jury's verdict of invalidity.

C.    Exceptional Case

Adenta cross-appeals from the decision of the district court finding no inequitable conduct and denying its request to declare the case exceptional.  Adenta argues that the court erred in finding no inequitable conduct when it found that Voudouris did not have the requisite intent to deceive the PTO.  According to Adenta, Voudouris did not invent the "aperture" in the bracket slip as claimed in claims 47 and 48, which were ultimately cancelled before the '883 patent issued.  Adenta also asserts that Voudouris knew of but failed to disclose the Time bracket to the PTO, and that that omission demonstrates that Voudouris intended to deceive the PTO.  Because Adenta asserts that the court erred in finding no inequitable conduct, Adenta also asserts that the court erred in not finding the case to be exceptional.

OrthoArm responds that the district court correctly determined that no inequitable conduct was shown and hence that this case was not exceptional.  According to OrthoArm, the aperture was only one limitation of claims 47 and 48, and, in any event, Voudouris cancelled claims 47 and 48 before the '883 patent issued.  Thus, OrthoArm asserts that there was no issue of incorrect inventorship.  OrthoArm further responds that it was reasonable for Voudouris not to submit the Time bracket to the PTO because

the '444 patent was submitted to the PTO, and that patent describes the Time bracket. Hence, OrthoArm asserts that there could have been no culpable intent resulting from Voudouris's failure to disclose the Time bracket to the PTO; it was merely cumulative to what had already been submitted. Because no inequitable conduct was shown, OrthoArm asserts that Adenta is not entitled to a judgment that this case be declared exceptional.

We agree with OrthoArm that the district court did not abuse its discretion in concluding that no inequitable conduct was shown and that the case was not exceptional. The jury found that Voudouris did not withhold material information from the PTO during the prosecution of the '883 patent. Because of that finding, the jury did not address whether Voudouris possessed the requisite intent to deceive the PTO. The court questioned the jury's finding on materiality, but still concluded that no inequitable conduct was shown. The court considered Adenta's allegations pertaining to inventorship and the failure to disclose the Time bracket to the PTO and determined that they did not amount to clear and convincing evidence of intent to deceive the PTO.

We conclude that the district court did not commit clear error in finding no intent to deceive or that it abused its discretion in finding no inequitable conduct. As OrthoArm indicates, claims 47 and 48 were cancelled before the patent issued and Voudouris stated that the claims were cancelled not because he believed he was not the inventor of those claims, but rather because he could not antedate the prior art references that pertained to those claims. The court was entitled to believe Voudouris, and we will not disturb that finding. Moreover, although Adenta argues that Voudouris should have disclosed the Time bracket to the PTO, Voudouris did disclose the '444

2006-1571, -1598                                    17

patent, which described the Time bracket. The court was entitled to assume that Voudouris acted in good faith in not disclosing the Time bracket to the PTO because he believed it was cumulative to the '444 patent. We therefore affirm the court's finding of no inequitable conduct. Because we affirm the court's finding of no inequitable conduct, we also do not find that the court clearly erred in declining to find this case to be exceptional.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

## AFFIRMED