CLEVENGER, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s reversal of summary judgment of inequitable conduct. I believe the district court was correct in granting summary judgment to State Farm on materiality, but should not have granted summary judgment on intent. Because there are material facts regarding Mr. Karasek’s intent to deceive the Patent and Trademark Office (PTO) in dispute, I would remand the issue of intent to the district court for a trial on the merits.
I. MATERIALITY
“The materiality required to establish inequitable conduct is but-for materiality.” Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1291 (Fed.Cir.2011) (en banc). The majority states that “the PTO Director acted in accordance with law and within his discretion in excusing the delayed payment,” Maj. Op. at 1240, but the PTO director’s past action is not in question. The correct question on materiality is whether the PTO would have granted Karasek’s revival petition if he had disclosed the circumstances surrounding the revival. Therasense, 649 F.3d at 1291-92. Because I believe that State Farm has shown[1] that the PTO would have denied *1245 Karasek’s petition, I would affirm the grant of summary judgment on materiality.
The relevant facts on materiality are not in dispute. The Navy made a deliberate decision not to pay the 7.5 year maintenance fee for the '122 Patent, and the '122 Patent expired on April 23, 2004. Several days later, Karasek learned that Hazim Ansari had attempted to contact the Naval Research Laboratory (NRL) about licensing the patent. No one at the NRL received or appreciated these messages. On the same day that Karasek received this second-hand information, he filed a revival petition with the PTO stating that the '122 Patent was unintentionally abandoned. Karasek did not include any information about Mr. Ansari’s contacts with the NRL or inform the PTO of the NRL’s original intentional decision to abandon the patent. Over one month later, Karasek received a letter from Mr. Ansari stating that “[o]n April 5th, we called the general number of the NRL Office of Technology Transfer and asked to speak to a person about the '122 Patent” and “[o]n April 12th, we sent an email expressing interest in the '122 Patent to [the NRL’s general email address] .... ” J.A. 443.
Network Signatures, relying on cases such as In re Patent No. 6,118,582, 2006 WL 4926249 (Comm’r Pat. June 13, 2006) and In re Maldague, 10 U.S.P.Q.2d 1477, 1478 (Comm’r Pat.1988), argues that the above facts present a “mistake of fact” scenario and the PTO would have granted the revival petition had Karasek disclosed them to the PTO. State Farm disagrees, and argues that this situation is indistinguishable from cases such as In re Patent of Carlson, 2003 WL 25523657 (Comm’r Pat. Jan. 24, 2003) and In re Patent No. 5,181,974, 2007 WL 4974450 (Comm’r Pat. Aug. 17, 2007), where the PTO denied revival under a mistake of fact theory.
The PTO’s cases do suggest that a petitioner can rely on a mistake of fact to revive an expired patent, but Network Signatures cannot cite to any case where the PTO actually granted revival under this theory. In Carlson, the PTO denied a revival petition because
[t]he discovery of additional information after making a deliberate decision to withhold a timely action is not the “mistake in fact” that might form the basis for acceptance of a maintenance fee.... The discovery of additional, other information is simply a change in circumstances that occurred subsequent to the expiration of the patent.
2003 WL 25523657, at *6.
In re '974 also reaches the same conclusion. In that case, the patentee allowed the patent to go abandoned when he failed to recognize that the patent was the subject of a pre-existing license agreement. In re '974, 2007 WL 4974450, at *3. The PTO denied revival, holding that “intentional action or inaction [in paying a maintenance fee] precludes a finding of unintentional delay, even if the agent-representative made his decision not to timely take the necessary action in a good faith error.” Id. at *4.
The regulatory history of the unintentional revival rules also supports the rejection of Karasek’s petition. In its Final Rule notice, the PTO explained when a *1246 petition for unintentional abandonment of a patent application will not be granted:
Where the applicant deliberately -permits an application to become abandoned (e.g., due to a conclusion that the claims are unpatentable, that a rejection in an Office action cannot be overcome, or that the invention lacks sufficient commercial value to justify continued prosecution), the abandonment of such application is considered to be a deliberately chosen course of action, and the resulting delay cannot be considered as “unintentional” within the meaning of § 1.137(b)-An intentional delay resulting from a deliberate course of action chosen by the applicant is not affected by: (1) The correctness of the applicant’s (or applicant’s representative’s) decision to abandon the application or not to seek or persist in seeking revival of the application; (2) the correctness or propriety of a rejection, or other objection, requirement, or decision by the Office; or (3) the discovery of new information or evidence, or other change in circumstances subsequent to the abandonment or decision not to seek or persist in seeking revival.
See Changes to Patent Practice and Procedure, 62 Fed.Reg. 53132, 53158-59 (Oct. 10, 1997) (to be codified at 37 C.F.R. pt. 1) (discussing the meaning of “unintentional” delay in the context of the revival of an abandoned application) (emphasis added); see also MPEP § 711.03(e)(II)(C)(l) (8th ed. Rev.9, Aug. 2012). The PTO treats unintentional revival of a patent application in the same manner as unintentional revival of an issued patent. See In re '974, 2007 WL 4974450, at *3-4.
The case before us today is no different from Carlson or In re '974 — the '122 Patent was the subject of a preexisting indication of commercial interest, which the NRL failed to appreciate. Network Signatures attempts to distinguish these cases by arguing that the unappreciated facts in Carlson and In re '974 were available to the petitioner at the time of the decision to abandon, but here the NRL could not know about Mr. Ansari’s interest in the patent. I would not excuse the NRL’s ignorance on the basis of a malfunction of its phone system and the illness of an employee at the time of Mr. Ansari’s contact with the office. Maj. Op. at 1241. Mr. Ansari left messages with the NRL’s general number and email address, and the NRL’s failure to receive or act on those messages cannot negate its deliberate decision to abandon the '122 Patent.
Essentially, the NRL would like to invoke a mistake of fact defense when the reason it failed to learn of Mr. Ansari’s commercial interest in the '122 Patent was of their own making. In In re '974 the PTO chose not to excuse a lawyer’s failure to appreciate the existence of a license. Similarly, in In re '582 the PTO would not excuse a patentee’s failure to “investigate all patent matters in which [the patentee] had a stake before making a decision thereabout.” In re '582, 2006 WL 4926249, at *5. Network Signatures has not found a single case where the PTO granted a revival petition based on a mistake of fact, and nothing in the PTO’s cases suggest that it would have excused the NRL’s neglect of multiple phone and email messages.
Network Signatures cannot distinguish itself from the PTO’s clear line of revival decisions, and I would affirm the district court’s finding that Karasek’s failure to disclose the facts surrounding the revival petition was material. While the majority believes that Karasek complied “with the standard PTO procedure for delayed payment,” Maj. Op. at 1243, the cases above demonstrate that the appropriate procedure is to disclose the petitioner’s basis for *1247 believing a deliberate abandonment was unintentional. The PTO’s practice of granting unintentional revival petitions as a matter of course is not the issue. Maj. Op. at 1243-44 n. 2. The problem is that Karasek knew the NRL patent was intentionally abandoned and did not alert the PTO to that fact. The PTO’s practice of granting such petitions automatically cuts against Karasek on the issue of intent to deceive; it does not negate the materiality of his actions. If the PTO had known the true facts, I have no doubt whatsoever that Karasek’s revival petition would have been denied.
II. INTENT
To prevail on summary judgment of intent to deceive the PTO, State Farm must prove by clear and convincing evidence that (1) Karasek knew of the withheld information, (2) knew that the information was material, and (3) made a deliberate decision to withhold it. To meet the clear and convincing evidence standard, a specific intent to deceive must be “the single most reasonable inference able to be drawn from the evidence.” Therasense, 649 F.3d at 1290.
In this case, the parties do not dispute that Karasek knew of the withheld information. The parties hotly dispute whether Karasek knew the information was material and made a deliberate decision to withhold it from the PTO.
While I do not believe that these issues cannot be resolved against Karasek on summary judgment, I cannot foreclose the possibility that State Farm could produce evidence sufficient to meet the Themsense standard at a merits trial. For example, Karasek’s statement that he never considered filing a supplemental statement with the revival petition rings hollow in light of his review of several PTO cases which included supplemental statements. See J.A. 344. The evidence that Karasek knew the PTO granted revival petitions as a matter of course also suggests that he deliberately decided to withhold information. Id. at 17-18.
However, at the summary judgment stage we must take the facts in the light most favorable to Network Signatures. State Farm has not shown that the “single most reasonable inference” to be drawn is that Karasek intended to deceive the PTO. At the summary judgment stage, another reasonable inference is that Karasek honestly, although misguidedly, believed that the PTO would grant his revival petition even if he did disclose the surrounding circumstances. This would make Karasek negligent, but negligence does not rise to the level of deliberately deceiving the PTO under Therasense, 649 F.3d at 1290.
Ill
The correct result in this appeal is a remand to the trial court on intent and an affirmance on materiality. I see nothing within the PTO’s cases on unintentional revival suggesting that the PTO would excuse NRL’s deliberate decision to abandon the '122 Patent simply because the NRL failed to check its messages. I also see disputed facts suggesting that the NRL’s lawyer deliberately withheld information from the PTO, knowing that the PTO would grant his revival petition if he remained silent. Because the majority does not agree with me, I respectfully dissent.

. There is some dispute in our post-Thera-sense case law over the correct standard of proof on materiality. Compare Aventis Pharma S.A. v. Hospira, Inc., 675 F.3d 1324, 1334 (Fed.Cir.2012) (applying the preponderance standard) with In re Rosuvastatin Calcium Patent Litig., 703 F.3d 511, 519 (Fed.Cir.2012) (applying a clear and convincing standard). In Therasense we faced a situation involving the withholding of prior art, and adopted a preponderance standard to accord with the PTO’s hypothetical review of the prior art during patent prosecution. Therasense, 649 F.3d at 1291-92 (”[I]n assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference. In making this patentability determination, the court should apply the preponderance of the evidence standard....”). Therasense also addressed our older unclean hands doctrine, which required ”[t]he accused infringer [to] prove both elements — intent and materiality — by clear and convincing evidence.” Id. at 1287. In this case, we are not evaluating withheld prior art, but rather information withheld post-issuance. At least two post-Therasense cases involving inequitable conduct not related to patentability used a clear and convincing evidence standard. Outside the Box Innovations, LLC v. Travel Caddy, Inc., 695 F.3d 1285, 1294 (Fed.Cir.2012) (false declaration *1245 of small entity status); Powell v. Home Depot U.S.A., Inc., 663 F.3d 1221, 1235 (Fed.Cir.2011) (failure to update Petition to Make Special). I would clarify that where inequitable conduct involves withheld prior art, it is correct to apply the preponderance standard. In cases such as this one, involving information not related to patentability, I would apply a clear and convincing evidence standard to materiality. Regardless, I would find for State Farm on materiality under either standard.